Vienticinque v. Back to Nature Good morning, your honors. May it please the court. My name is Michael Reese and I'm counsel for appellate plaintiff. I've noted that I've reserved two minutes for rebuttal. Thank you. We are here today on an appeal from an order of the district court dismissing this action with prejudice and without leave to amend under federal civil procedure rule 12b6. The lower court ruled as a matter of law that no reasonable consumer would be misled by defendants packaging, which is right here before your honors, that allegedly misrepresented the predominant type of grain in this product, stone ground wheat crackers. Both sides agree that this circuit's decision and Mantecas v. Kellogg at 910 F 3rd 633 from 2018 controls and governs here. Mantecas is governing precedent and mandates that the lower court dismissal be reversed. Both Mantecas and this case before your honors dealt with crackers. In the case of Mantecas, it was cheese. It's crackers and the case here. It's stone ground wheat crackers. Both cases dealt with representations on the front of the packaging regarding the type of wheat grain in those products. So the Mantecas, uh, it's in big letters across the middle of the box. Whole grain. Um, does that distinguish the case from this one where the whole it doesn't, your honor. And there's and there's a number of reasons why it does not. First of all, there's no question that the misrepresentations at issue are on the front of the packaging. Remember, we're talking about the reasonable consumer standard, not the standard of sophisticated attorneys like ourselves are seeing the box taking months. This decision took six months to come from lower court. They both involved front of the packaging labeling. Um, as we stayed in our papers, both the products and the name itself is misleading. Here's stone ground. It's the same as whole wheat ground. If you go to Wikipedia, I'll say stone ground flour is whole wheat flour. That's the same font size as cheeses. And if you note the name of the product here, in fact, is stone ground wheat crackers, where in Mantecas, the name of the product was cheeses, crackers, and there's no misrepresentation is in the use of stone ground because I understand most of the briefing to focus on the whole wheat flour designation lower on the way we were on the front. Judge Livingston, it's both. And in fact, as Judge Chin is, in fact, ruled and think the time Warner context is crucial. The packaging, you have to take it into the entire packaging into what a reasonable consumer would look at at a supermarket. So that's the entire ground. You know, first of all, this is a reasonable consumer one who's really health conscious. Someone like me who doesn't really know the difference among these different things. That's one question. But stone ground we could mean anything, right? I'm not sure what it really tells us. Well, it doesn't. Again, we have. I think this is a very telling question, because this we're at a rule 12B6 stage. No discovery is taking place where the reasonable consumer standard going through the grocery store. And so as the Seventh Circuit talked about when actually it's talking about the Manteca's decision, the binding precedent in this case, this is what the court said. Consumer protection laws do not impose on average consumers an obligation to question the labels and see in the parsed them as lawyers might. Sticking to the reasonable consumer standard avoids this temptation and stays in touch with reality. So to go back to your question, Judge Chin, if you actually go through a grocery store and look at the flour section, there are bags and bags of stone ground flour, which you can then use to make bread. You can make crackers if you make crackers at home. Bob's Mills, one of them. King Arthur is another one. All of those are a hundred percent whole wheat. If you go to Wikipedia, which is a common source for people to look up information, it says stone ground equals whole ground wheat. And let's be clear, the predominant grain in this product is not whole ground whole grain wheat. It is refined flour and refined flour cannot be made through stone ground process. But again, going to your question... I didn't see an ingredient list. You can sort of like try to expand the side of the box, the one that's in the record. Is there a list of ingredients in the record that's legible? That I don't know. I do know that the pictures of the ingredient list are from the box itself. I know, but when you try to spread it to make it bigger, I can't read it. But the complaint alleges that the predominant ingredient is refined bleached flour. Yes, that's in the complaint itself. We don't know in terms of the percentages of that versus the whole wheat flour. Do we from the complaint? We don't, other than this is where Mantikius is on point four, but I want to go back to your first question, Your Honor. If there's question as to what stone ground means in the consumer's mind, again this is a Rule 12b-6, well then it's right below. It says organic whole wheat flour. So some consumer thinks, well what does stone ground mean, even though Wikipedia says it means whole wheat flour. If you go to the grocery store where they sell flours, stone ground flour is the same as whole wheat flour. It tells you right here, organic whole wheat flour. And to go to your question about the nutrition fact panel, is there a legible copy? The answer probably is no, because even if you had the box, and we're welcome to hand this up to Your Honors or give it to you after this, it's very illegible. Any of you can read it. I have to say my eyesight was not what it used to be. It says the first ingredient is organic, unbleached, enriched wheat flour. So is that supposed to connote to the reasonable consumer that's drilling down on this with a microscope that this in fact is not the whole wheat flour on the front? Where does whole wheat flour appear on the list? It's third, and I would note it's the third ingredient. Or second. Saffron, organic saffron oil. And why this is important? In Manteca's, whole wheat flour was the second ingredient. Here it's even one more down in order of predominance. It's a little different though. I mean we're supposed to look at the totality of the circumstances, the whole label, the whole front. And the Cheez-It label, I mean it's clear that there's a Cheez-It cracker. This is the whole grain version of the Cheez-It cracker. It's called whole grain. Here, I guess from your argument today, you're saying the same information is conveyed by Stone Ground. Because if we just look at that whole wheat designation at the bottom, it doesn't seem to label the cracker as a whole wheat cracker in the same way. It looks like it's saying one of its ingredients is whole wheat, one is sea salt, one is seed, flax seed, whatever it was. Well, again, this is from the standard of the reasonable consumer, and this is a preferred ingredient list, which the FDA talks about, and said this is what consumers look at. A list like this, which says organic whole wheat flour, to the reasonable consumer knows that crackers are made from flour, and they can be made from a hundred percent whole wheat flour. So where are you going to look to determine that? Right on the front of the packaging. And I would note defendants say, well, you should look to the back of the packaging for disclaimers. Well, if you actually look at this packaging, which is the packaging at issue, there's no such disclaimer. In fact, it says made with organic ingredients like whole wheat flour, whole ground flax seed, and sprinkled with sea salt. I would note, too, that this reasonable consumer standard, we cite FDA standards, we cite FTC standards, and in fact, Judge Livingston, the two cases in our motion for judicial notice are cases that you ruled upon, the Richardson case in 2017, the Apotec case, which was another FDA guidance case, which you ruled on in 2016, and said that type of guidance can come in. And if you look at that guidance, it says, this is from the Federal Trade Commission, the federal entity charged with protecting consumers and has specific information and knowledge in this. Many consumers interpret such unclaimed, unqualified claims to mean that all or nearly all the grain in the product is whole grain. The FDA, the Food and Drug Administration, also said, recommended that whole wheat claims only be labeled such when the entirety of the product is made from whole wheat flour. So if you look at Mantecas, which is governing precedent, you look at the FDA, you look at the FTC, and you remember, this is a 12B6 motion where we were denied motion for leave to amend. We're not at trial. We're not even at summary judgment. If defendant thinks they can show reasonable consumers would not be misled, they should only have the opportunity to do later on, but this should not be dismissed with all this governing precedent, regulatory information. Can I ask one question? Yes, Judge Robinson. I'm trying to connect your argument, and I understand your focus here on the name Stone Ground Wheat Crackers. When I read your brief, it focuses on the claim on the front of organic whole wheat flour, and it says, if anything, the name only heightens the confusion because people associate Stone Ground with minimally processed. I think what I'm hearing now is almost centering the title Stone Ground as the centerpiece of your claim that is misleading. Am I following the thread wrong? I'm certainly emphasizing because context is crucial, and so we don't want to say don't look at the rest of the box. In fact, we think you should look at the entirety of the box, but the organic whole wheat flour claim by itself is misleading. It's misleading under the precedent of Mantecas. It's misleading under the FDA and the FTC information that we provided to you, so that by itself is a misleading statement. You don't need more, but Stone Ground underscores that as well, and maybe this goes to the point, could the complaint been more robust? We certainly didn't think it had to be, but we certainly can add more information and talk about how Stone Ground... Wikipedia, in fact, talks about it being the same as Stone Ground. We can take pictures from the grocery aisle and show that Stone Ground flour made by King Arthur's by Bob's Mill says Stone Ground flour is the same as 100%. I notice my time is up, but hopefully that answers your question. But I just want to underscore why, again, this was dismissed without leave to men. We really didn't have a chance to men. The only men was based upon the LLC rule, didn't have any substantive changes. Thank you, Your Honors. Thank you, Your Honors, and may it please the Court. I think this case is really about what legal standard we're going to apply to these types of labeling cases. And the legal standard that the other side is proposing is one that requires district courts to ignore information on the packaging and prohibits them from considering information. I think if you're going to look at what is reasonable to a reasonable consumer acting reasonably under the circumstances, you have to consider all the circumstances. There's nothing in Mantecas or any of this court's precedents before or after Mantecas that would require fettering district courts in this way. Well, I mean, putting aside the font size issue, the claim here is identical to the claim in Mantecas. And it's false for exactly the same reason and misleading for the same reason as Mantecas. Am I missing something? It's a much different label than Mantecas. In Mantecas, you have- No, no, but the words, the claim. The claim, which is that it lists organic whole wheat flour right there on the front. And I guess your position has to be, in order to warrant dismissal, that no reasonable consumer could be misled by that into thinking that that's predominant, if not sole flour base for these crackers. Well, the entirety of this label, I mean, if the top of the label says Back to Nature, which is the name of the brand, and it's an organic product, then the sort of second most important thing says plant-based snacks. So it's, again, a plant-based snack. Then you have a rendering of the cracker. So you can see that it's a delicious and good food. Below that, you have the name Stone Ground Wheat Cracker, Organic Stone Ground Wheat Cracker. So you can see that it's a wheat cracker. And as Judge Livingston pointed out, there's nothing in there about whole wheat. And then below that, in small letters, even smaller font than the net weight, you have an incomplete list of ingredients. It's not the single dominant feature that's being advertised in Mantecas. But to accept your view, we'd have to think that no reasonable consumer could think that that partial list of ingredients would be drawing from something that would be drawing a flour that was not a dominant, was not the dominant flour. And it strikes me that everything that you've just listed, the plant-based and the Back to Nature, and all of that reinforces a vision of healthfulness, which consumers who are looking for healthful crackers would associate with not processed flour, but whole wheat, unprocessed flour. I mean, it seems to me those other features all buttress the notion that this ingredients list conveys, I mean, if I were a consumer, I would think it was all whole wheat flour. But even if the theory is predominantly whole wheat flour, it's just not true. Well, it's an obviously incomplete list. And when you have an ambiguity on the front of the label, a reasonable consumer acting reasonably under those circumstances, if you care about the ingredients and you want whole wheat, which this consumer actually didn't, you know, and you're... So in Mantikas, the court held that the disclosures on the side of the box did not render the allegations of deception implausible. Why doesn't that apply here? Because the label is ambiguous on the front. And that three panels of this court... Is it plausible that a reasonable consumer would think they were buying a product that was predominantly whole wheat flour? I don't think so, not on this label. I think... So when you usually see a list of ingredients, aren't they usually listed in the order of what the largest quantity, by amount of quantity, by quantity? Well, I mean, there's three ingredients that are on the front. And they're put there for purposes of showing the flavor and the texture that gives us... You don't think it's plausible that a reasonable consumer picking up the box would think they were buying something that was predominantly whole wheat? I think... Instead of predominantly bleached enriched flour? Unbleached, I should say. In the same way that they wouldn't think that they were picking up a product that was predominantly salt or predominantly organic brown flaxseed. It's a list of the things that give the product its characteristic flavors and textures. I might agree with you with regard to the sea salt, right? I mean, I could well imagine that if you were making a cracker, you'd sprinkle sea salt on the top and use some processed salt to get better consistency through the cracker of the salt. But when you see whole wheat flour on the front as the first of a list of three ingredients, why would you think that there's anything but whole wheat flour? And something that is also said to be a back-to-nature flour, stone ground wheat cracker? I mean, I guess it seems to me you're essentially... It's very hard to distinguish this case from our prior decision, the Cheez-It whole grain cracker, unless we just say it makes a difference how big the type is. Well, I mean, again, in the full context of Mantecas, you have regular Cheez-Its and whole grain Cheez-Its. The whole grain is part of the statement of identity of this product. It's the biggest, most prominent feature that's advertised on that label. And that is, it's different. It's sold next to regular Cheez-Its. This product is sold on its own. Is that a factor? I hadn't really thought about that. So in Mantecas, do we consider whether the label is deceptive by imagining what it's next to on the shelf and what the label on the shelf next to it says? Or do we have to evaluate it as a self-contained box without regard to what might be next to it on the shelf? Well, I'm not sure the full state of the record in Mantecas, Your Honor. But I would say that you have to consider all the context. And that's our point here. So when you're talking about a label, I mean, is there a case law that sort of describes context as being extrinsic to the product? I guess that's what I'm trying to figure out. I'm not aware of any cases that have looked specifically to that factor. But it's part of the context of the purchase decision. Part of the context of the purchase decision here, as Judge Caproni pointed out, is that you have a front of the box with an incomplete list of three ingredients. And literally, in order to avoid seeing the side of the box where you have a full list of ingredients, you would have to hold the box in an unnatural way as you took it off the shelf, as you put it in your cart, as you put it on the conveyor belt. You would have to studiously avoid seeing that there was more than three ingredients. The point is, if you have an ambiguity on the front of the label, you need to do more investigation if you're a reasonable consumer acting reasonably. So if I'm understanding it's, because it's ambiguous as to whether there's more than three ingredients, or because I think a reasonable consumer would assume there are more than three ingredients. No reasonable consumer could believe from the fact that back to nature, plant-based stone ground wheat crackers that list organic whole wheat flour first actually comprise predominantly organic whole wheat flour. The standard is a reasonable consumer acting reasonably under the circumstances. And acting reasonably under the circumstances when you're confronted with an ambiguity, when you're confronted with a partial list of ingredients, is, this information is required by the FDA. It's been required for decades that you put the ingredients on your product so that people can make these precise choices. And so that they can look at the ingredients and decide, is this, does it have the ingredients that I want? Does it have the features that I want? So what's the purpose if consumers are sort of expected, who care about the ingredients, are expected to look at the ingredients list? What's the purpose of highlighting organic whole wheat flour, organic whole brown flaxseed, and sea salt? What's the message that back to nature is trying to convey by pulling those minority ingredients out of the list and putting them on the cover? In the context of this product, it's talking about the taste and the texture that these ingredients convey. You have a label that is describing in, you know, the most part, the features that consumers really want, which are the taste and the organic nature of this product. How is this case different from Mantecas? Is the cover in Mantecas not ambiguous? Is that your argument? The cover in Mantecas is deceptive. The whole grain is part of the brand of the product. How is this case different from Mantecas? This case is different from Mantecas because this is an incomplete list of ingredients on a label that emphasizes a million other things. And when you have that kind of ambiguity, it's incumbent upon the consumer to look and see, you know, whether there's more to this. I'll give you an example, Judge Chin. My friend, Mr. Rees, has filed over 50 cases that deal with the term vanilla. That term is ambiguous because vanilla is a noun and it's also an adjective. And so vanilla could refer to the V. planifolia plant that comes from Madagascar and be an ingredient. Or vanilla could be the vanilla milkshake that you get at McDonald's or vanilla smoothie, vanilla ice cream. That's an ambiguity. Under his view of the world, my clients would have to collect their emails, have their executives sit for depositions, because this ambiguity should somehow be construed against the company. These are unwritten rules that are changing, as you can see, even in the context of this case, how, you know, stone ground now becomes important, even though that wasn't important. So organic whole wheat flour is sort of like vanilla. It's not clear what it really means. It's not the organic whole wheat flour. It's the full context of this label. It's on an incomplete list. You would have a pile of sand if those were the only three things in your product. It's an incomplete list because everybody knows that it's not one third salt. I mean, in this product, that is an ambiguity. And it's an ambiguity that's easily resolved by looking at the ingredients. And that's the purpose of the rule. When there's an ambiguity, and the ambiguity can be cleared up by other things on the label, you have to consider the whole label, and you can't myopically focus on one piece. You can't read something that's ambiguous in a way that, you know, hurts the defendant. There shouldn't be the exposure to federal litigation when you truthfully, but ambiguously, label a product. I think one other question just about the ambiguity rule. If you characterize that as a rule, and as I understand it, a couple of circuits have rejected it, but wouldn't you say that she's at label is ambiguous? I mean, it doesn't say made only with whole wheat flour. So when it just says whole grain, does that mean made only with whole grain, or made partially with whole grain? I need to turn it over. I think the Cheez-It label was deceptive because it was part of the statement of identity of the product. The product was a whole grain Cheez-It. It's much different than a wheat cracker. A wheat cracker can be made of wheat, and that's what it's made of. And the rule about ambiguity has been adopted by the Ninth Circuit. It was employed by three panels of this court, including in Foster, which was Judge LaValle, who wrote Mantikas, was on that panel. And what he said was, Mantikas does not alter our conclusion. He argues that Mantikas rejected the proposition that if the front of the label of the product is ambiguous, additional clarification on the back can render the front labeling not deceptive. That is not what Mantikas held. In Mantikas, we determined that contextual information on the reverse of the product's packaging could not overcome clearly inaccurate factual representations on the front labeling. And that's the point, is Mantikas is a rule that says consumers can be lulled into a false sense of security by labeling that is clearly deceptive or false on the front. Right, I'm trying to figure out how different those are. The reasoning in Mantikas wasn't even if you turn over and you read the ingredient list, it can't override a factual statement on the front. We don't expect a consumer to look at the ingredients list to validate or contradict clearly stated claims on the front. And so applying that here, that's the standard we're applying here, whether you call it an ambiguity exception or not. I don't call it an exception, I call it this court has always applied a totality of the circumstances test. And the totality of the circumstances when you're judging whether a reasonable consumer is acting reasonably under the circumstances, you have to consider things on the back of the label or the side of the label that are available that are not inconsistent with the front of the label. But not always, right? I mean, in Cheez-It you didn't have to, right? There are times when the claim, a reasonable consumer could rely on the claim on the front, regardless of contradictory information in the ingredients box on the back. I mean, you're not disputing that proposition, are you? No, I agree with that, Judge Robinson. And I think the Gerber case is a good example out of the Ninth Circuit,  didn't have any of the fruits in the back, like when you looked at the ingredients. That's something where the consumer could be lulled into a false sense of security. When you have something that's ambiguous, like vanilla or an impartial list of ingredients, or any number of other situations, that ambiguity can be cured by looking at the side of the box sometimes. Sometimes it can be cured by looking at other information. There's not some kind of inflexible wooden rule that requires courts to say that whole grain is always misleading to people, as they seem to suggest. The context of this package, it is ambiguous as to what is being said. Thank you. Thank you, Your Honors. Thank you. Just a couple quick points, Your Honors. This case is on all fours with Mantecas, but I just want to make one comment first. These statements on the front of the packaging that are at issue here are statements voluntarily made by the defendant. They are not required by any FDA rules or regulations. They're for marketing purposes. And why did they put them on the front of the packaging? Because they know that reasonable consumers are going to look there for the information that's important. And what's on there? Organic whole wheat flour. And what's missing? The key ingredient in this product, which is the unbleached, enriched, refined flour. By the way, Judge Livingston, there is no other salt than the sea salt in this product. There's no iodine. And with respect to the organic brown flaxseed, that's the only type of flaxseed in this product. So this information is where consumers look for information. It's exactly misleading because it doesn't contain the key ingredient, which is the unbleached, enriched flour. And as we point out in the papers, as the FDA and the FDC have said, this is very important. The American diet, we're going through a health epidemic. We're supposed to get at least 50% of our grains from whole grains. We are very short of that. And because of that, the FDC and the FDA have said, these type of claims are likely to mislead consumers. That's what this court said. And it's governing precedent. We all agree it's governing precedent of the Manteca's decision. And remember, this is a Rule 12b6 motion. It's whether or not it's plausible. And given the precedent of this court, given what the FDA has said, what the FDC has said, and the box itself, which if you go to the back of the box again, what does it say? Made with whole wheat flour. It doesn't say a single thing about enriched, refined flour. So unless your honors have any questions, we submit on the papers. I would note we did make a motion for judicial notice. We cited two cases by your honor, Judge Livingston. And we assume those, we're ready to submit those on the papers as well. Thank you. And we will take the matter under advisement. Could the party submit a, can we agree that we'd like to take the box now? Absolutely. Because we can't, my colleague is right. You can't see the side labeling. On the back as well. On the back. So if we could have that marked by the deputy and we'll. Can we help ourselves to some? I would note this case has been going on for a few years, so you may want to check the expiration date. Thank you both. Well argued.